IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) ) ) | |
| v. | ) ) | Criminal No. 21-14 Civil No. 23-1450 |
| ARTHUR LEE DAVIS, | ) ) | |
| Defendant. | ) ) ) | |

**MEMORANDUM OPINION**

I.    Introduction

Pending before the court is a pro se § 2255 motion (ECF No. 79) filed by defendant Arthur Lee Davis ("Davis" or "defendant").  The government filed a response in opposition to the motion (ECF No. 88)[1] and it is ripe for decision.  Davis argues that his statute of conviction, 18 U.S.C. § 922(g)(1), is unconstitutional after the decisions in *New York State Rifle & Pistol Association v. Bruen*, 142 S. Ct. 2111 (2022), and *Range v. Attorney General of the United States of America*, 69 F.4th 96, 101 (3d Cir. 2023) (en banc).

II.    Factual and Procedural Background

On December 13, 2022, Davis pleaded guilty to count 1 of the Indictment at Crim. No. 21-14, which charged him with Possession of a Firearm By a Convicted Felon in violation of 18 U.S.C. § 922(g), on or about January 20, 2021.

As detailed in the presentence investigation report ("PIR"), Davis committed the instant offense while under a criminal justice sentence at two other cases in United States District Court for the Western District of Pennsylvania, Crim. Nos. 07-77 and 08-411.  He was in criminal

---

[1] The government submitted videos of Davis' apprehension and an interview with law enforcement officers.

history category IV (ECF No. 66).

At Crim. No. 07-77, Davis pled guilty to conspiracy to distribute 50 grams or more of crack cocaine and was sentenced to 121 months in prison.  The offense conduct, as set forth in the PIR, included a report of shots fired at a Cricket store.  (ECF No. 66 at ¶ 37).

At Crim. No. 08-411, Davis pled guilty to a RICO Conspiracy and three counts of Attempted Murder in Aid of Racketeering Activity and was sentenced to serve a total of 146 months in prison.  In the PIR, Davis was identified as a member of a gang, the Northview Heights/Fineview Crips.  His role was described as follows:  "The defendant was considered a "gorilla/soldier" of the enterprise, whose primary responsibility was providing protection for the enterprise through the possession and use of firearms, and the commission of acts of violence." (ECF No. 66 at ¶ 38).  Davis was identified as the shooter of a rival gang member in May 2005. Davis admitted to a shooting which took place on May 8, 2006, that involved rival gang members.  In August 2006, he committed a robbery at gunpoint.  *Id.*  As a juvenile, Davis was caught with firearms on his person on multiple occasions.  In one incident, he pointed the firearm at police officers.  *Id.*

Davis was released from prison and began a term of supervised release in October 2020. His conditions of supervision prohibited him from possessing a firearm.  He committed the offense in this case just 3 months later, in January 2021.  The weapon he possessed had a high-capacity magazine with 16 rounds of ammunition.  *Id.* ¶ 12.

On April 13, 2023, Davis was sentenced to a term of imprisonment of 57 months in this case (Crim. No. 21-14), which was the low end of the applicable advisory guideline range.  At the same time, the court revoked supervised release and sentenced Davis to a term of

imprisonment of 12 months at each of Crim. Nos. 07-77 and 08-411, to run concurrent with each other, and consecutive to the prison term imposed at Cr. 21-14.

Davis' § 2255 motion is timely filed.  The court issued a "Miller Notice" (ECF No. 83). Because Davis did not file a contrary Statement of Intent, the court will decide his § 2255 motion as filed, with the attendant consequences under AEDPA, as set forth in the notice.


III.   Discussion

A.  The decision in *Range*

Davis argues that in *Range*, the Third Circuit Court of Appeals ruled that § 922(g)(1) is unconstitutional because it violates his Second Amendment rights, and therefore, he is actually innocent of committing any crime (ECF No. 79 at 7).  Davis argues that he "poses no immediate threat to the safety of the community in any way cognizably related to gun violence (ECF No. 79 at 11).  Davis did not file any motion challenging the revocation sentences of imprisonment at Crim. Nos. 07-77 and 08-411.

The government argues that Davis' claim is procedurally defaulted because he failed to preserve this argument in the district court and in a direct appeal.  The government also disputes the merits of Davis' argument and contends that § 922(g)(1) remains constitutional as applied to Davis for numerous, complementary reasons: (1) he failed to meet his burden to produce evidence; (2) he was on supervised release at the time; (3) he was committing other crimes and using drugs; and (4) he has a history of violent conduct.  In sum, the government argues that § 922(g)(1) is constitutional as applied to Davis.

B.  Procedural default

Under § 2255 a petitioner must establish that he previously exhausted his claims,  The procedural default rule bars review unless the movant can establish: (1) both cause for the failure to exhaust his claims and resulting prejudice; or (2) that he is actually innocent of the crime. *See, e.g., Hodge v. United States*, 554 F.3d 372, 378-79 (3d Cir. 2009).  Davis does not assert actual innocence, but points to the *Range* decision, which was issued on June 6, 2023 (after his conviction became final) as a new, retroactive change in law.

The court is not aware of any decisions directly addressing this argument.  In *United States v. Thurmon*, No. CR 20-2685, 2024 WL 796627, at *7 (E.D. Pa. Feb. 5, 2024), report and recommendation adopted sub nom. *United States v. Thurmon*, No. CR 09-262, 2024 WL 776606 (E.D. Pa. Feb. 26, 2024), the court faced a similar issue.  The court explained that whether the decision in *Rehaif v. United States*, 139 S. Ct. 2191, 2194 (2019) (holding that under § 922(g)(1), the government must prove "that the defendant knew he possessed a firearm and also that he knew he had the relevant status when he possessed it"), excused procedural default was a close question.  The court observed that "neither the Supreme Court nor the Third Circuit has yet decided whether the failure to exhaust a challenge to the knowledge element of one's prohibited status under section 922(g) can be excused on the grounds that the Court's ruling in *Rehaif* could not reasonably have been anticipated."  *Id.*  The court assumed, without deciding, that the petitioner could overcome the procedural default.  *Id.*  In this case, the court will also assume, without deciding, that Davis could overcome the procedural default and will address his arguments on the merits.

C. Facial vs. "as applied" challenges

Davis' understanding of the *Range* decision is incorrect. *Range* did not facially invalidate § 922(g)(1). In *Range*, which involved an "as applied" challenge, the Third Circuit Court of Appeals noted "*Bruen's* focus on history and tradition"; recognized the overruling of "*Binderup's* multifactored seriousness inquiry"; and outlined the proper analysis:

> After *Bruen*, we must first decide whether the text of the Second Amendment applies to a person and his proposed conduct. 142 S. Ct. at 2134–35. If it does, the government now bears the burden of proof: it "must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id.* at 2127.

*Range*, 69 F.4th at 101.

At the first step of the "as applied" analysis, the court rejected the government's contention that only "law-abiding, responsible citizens" are protected by the Second Amendment. *Id.* at 103. The court also resolved the "easy question" that "§ 922(g)(1) regulates Second Amendment conduct." *Id.*

At the second step of the analysis, the government must demonstrate that § 922(g)(1) "is consistent with the Nation's historical tradition of firearm regulation." *Id.* Historical tradition can be established by analogical reasoning. "[R]egulations targeting longstanding problems must be "distinctly similar" to a historical analogue." *Id.* Modern regulations can be compared to historical analogues using the metric "how and why the regulations burden a law-abiding citizen's right to armed self-defense." *Id.*

The court in *Range* recognized several pronouncements by the Supreme Court about the presumed validity of § 922(g)(1):

> the Supreme Court's statement in *Heller* that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons." 554 U.S. at 626, 128 S.Ct. 2783. A plurality of the Court reiterated that

point in *McDonald v. City of Chicago*, 561 U.S. 742, 786, 130 S.Ct. 3020, 177 L.Ed.2d 894 (2010). And in his concurring opinion in *Bruen*, Justice Kavanaugh, joined by the Chief Justice, wrote that felon-possession prohibitions are "presumptively lawful" under *Heller* and *McDonald*. 142 S. Ct. at 2162 (quoting *Heller*, 554 U.S. at 626–27 & n.26, 128 S.Ct. 2783). Section 922(g)(1) is a straightforward "prohibition[ ] on the possession of firearms by felons." *Heller*, 554 U.S. at 626, 128 S.Ct. 2783.

*Id.* at 103-04.

The court in *Range* explained that its decision was "narrow" and involved "the constitutionality of 18 U.S.C. § 922(g)(1) **only as applied** to [Mr. Range] given his violation of 62 Pa. Stat. Ann. § 481(a) [making a false statement to obtain food stamps 25 years earlier]." *Range*, 69 F.4th at 106 (emphasis added). In *Range*, the court held that the government failed to meet its burden at step two to show that the historical tradition of firearms regulation would have deprived Mr. Range of his Second Amendment right to possess a firearm in light of his non-violent conviction. *Id.* at 106. *See United States v. King*, No. 5:22-CR-00215-001, 2023 WL 4873648, at *4 (E.D. Pa. July 31, 2023) (the court determined in *Range* that the "early law that prohibited convicted felons from possessing firearms applied only to violent criminals, and Range had not been convicted of a violent crime.").

D. "As applied" challenge in this case

The distinction drawn by the majority opinion in *Range* between violent and nonviolent felons does not help Davis. To the contrary, the majority opinion in *Range* recognized that § 922(g)(1) is constitutional when applied to violent felons. *Range*, 69 F.4th at 104. Judge Ambro, joined by two other judges, concurred separately to explain that the government's failure to meet its burden in *Range* did not spell doom for § 922(g)(1) and it remains "presumptively lawful." *Id.* at 109 (Ambro, concurring). The dissenting judges would have held that §

922(g)(1) remains valid, even as to a nonviolent felon like Mr. Range.

The Third Circuit Court of Appeals in *Range* considered the defendant's underlying offense of conviction. Davis, unlike Mr. Range, is a violent felon. *See, e.g.,* 18 U.S.C. § 924(e)(2)(B) (defining "violent felony"); 18 U.S.C. § 924(c)(3) (defining "crime of violence"). Davis' status as a felon unable to possess a firearm is based on his prior convictions for a serious crack cocaine conspiracy, a RICO conspiracy based on gang activity, and three counts of attempted murder (using a firearm). PIR (ECF No. 66). Davis' criminal history, as recounted in the PIR, reflects numerous instances of violence involving firearms (ECF No. 66). Contrary to Davis' suggestion, he does pose a cognizable threat to the safety of the community related to gun violence.

*Range* was a narrow decision which involved an underlying conviction for making a false statement to obtain food stamps in violation of Pennsylvania law. *See* 62 Pa. Stat. Ann. § 481(a). Davis' underlying convictions present starkly different dangers to the public than the food stamp fraud conviction at issue in *Range*. *Bruen* did not address the constitutionality of § 922(g)(1), but instead considered a New York licensing regime. *Bruen*, 597 U.S. at 11. Neither decision casts substantial doubt on the constitutionality of § 922(g)(1) facially or as applied to Davis.

E.      Summary

It is consistent with historical tradition to deprive Davis, a violent felon, of his right to possess a firearm. Section 922(g)(1) is not unconstitutional facially or as applied to Davis. His § 2255 motion will be denied.


IV. Certificate of Appealability

Pursuant to 28 U.S.C. § 2253(c), the petitioner in a § 2255 proceeding may not appeal from the final order in that proceeding unless he makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude that the issues presented here are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The court finds that jurists could not conclude that the issues presented here are adequate to deserve encouragement to proceed further and accordingly DENIES a certificate of appealability.

Conclusion

In accordance with the foregoing discussion, the pro se § 2255 motion filed by Davis (ECF No. 79) will be denied.  A certificate of appealability will not issue.  Civil Action No. 23-1450 will be marked closed.

An appropriate order will be entered.


                                                    By the court,

Date:   March 5, 2024                               /s/ JOY FLOWERS CONTI
                                                    Joy Flowers Conti
                                                    Senior United States District Judge